19-2227 from the Western District of Missouri, Maureen Johnson v. Safeco Insurance Company of Illinois. Mr. Coppedge. Thank you, and may it please the court. My name is Brett Coppedge, and I represent appellant Maureen Johnson. Appeal from a summary judgment ruling whether Maureen Johnson underinsured motorist coverage from Safeco. Ms. Johnson was in an automobile collision in a wood van that was owned by her employer and insured by travelers. There was $1 million in underinsured motorist coverage available on the traveler's policy that her employer purchased. That coverage was primary. Her husband insured three personal vehicles through Safeco, and the Johnsons purchased $250,000 in underinsured motorist coverage for each of those three. The $1 million primary policy issued by travelers, those proceeds and limits were tendered to Ms. Johnson. Thereafter, Ms. Johnson claimed or made a demand for benefits from Safeco, and Safeco denied that any coverage was available under the personal plans that Ms. Johnson and her husband purchased. The trial court held that there was no coverage available The trial court addressed two issues. First, whether as a threshold issue, $250,000 in coverage is available to Ms. Johnson, and secondarily, whether the three vehicles insured by Ms. Johnson, whether the limits for those three vehicles could be stacked. In other words, intrapolicy stacking on the Safeco policies. Initially, on appeal, both of those issues were raised before this court. At this time, we've withdrawn the intrapolicy stacking issue, and the whole issue before this court is whether Safeco is required to pay the $250,000 in coverage applicable. The policy coverage is the other insurance provisions of the policy at issue, and that is a particular provision within the policy that is ambiguous, at least three possible alternative interpretations. Insurance language applies only to Safeco policies. The second plausible alternative interpretation is that paragraph one of the other insurance language applies separately to primary insurance on the one hand and excess coverage on the other hand. Then the third alternative interpretation, which in my opinion is the least reasonable and most constrained of the interpretation that's been taken by Safeco, and that particular interpretation is that paragraph one of the other insurance policy applies not just on Safeco policies, but applies to policies from insurers, Safeco or otherwise, and applies not just on a primary or excess, that particular limitation applies across layers of coverage. Back to the first interpretation that I addressed, and the reason why a reasonable and ordinary insurer, such as Ms. Johnson, might believe that that is what the policy intends, is looking at the whole policy as a whole. So the other insurance language begins with the statement, and I quote, if there is other applicable underinsured motorist insurance available under one or more policies or provisions of coverage. Stopping in that sentence to notify a insurer that this language is intended to apply not just to Safeco, with whom they are contracting, but to other insurers contracting that an insured may not even know exists, or that coverage might even be available. The other reason why an insured is not likely to understand or appreciate Safeco's constrained interpretation that this applies to any insurer's policy, is because there's other language in the policy that that explicitly just limit particular language to Safeco policies, and in particular, I'm referring to the general provisions in the Safeco policy beneath the heading, quote, two or more autos insured with two or more auto policies. Beneath this general heading, Safeco goes on to elaborate what it means by that, and it says that, quote, if this policy, if this policy insures two or more autos, or other auto insurance issued to you by us, us being Safeco, that Safeco's liability shall not exceed the highest limit applicable to any other insurance. Counselor, let let me interrupt you. Isn't that a very bad point for you? Because that says policy issued to you by us, and, of course, as you know, the main section says one or more policies broader than anything. Isn't just the natural reading of that is the one says we put issued to you by us if we did it, you know, those are defined terms, and the other one just has it as broad as can be. I disagree that it is bad for us when you look at the context of the language in the policy. So the heading here is two or more auto policies that it's specifically referring to Safeco policies. The language in the introductory paragraph in the other insurance provision refers to one or more policies, and so that language is the heading, and that heading is, it's my contention, that the language beneath the heading in the general provisions is meant to define and give meaning to the term two or more auto policies. So I disagree, and I'm glad you asked that question, because I think that language actually does help to explain what an ordinary insured might expect. So the the first interpretation, as I indicated, is that just Safeco policies are the policies being referred to in the introductory paragraph and also paragraph one. Like the introductory paragraph, paragraph one does not contain any explicit language indicating it applies to policies issued by other insurers other than Safeco. General language indicating that recovery for damages under all such policies or provisions of underinsured motorist coverage may equal but not exceed the highest applicable limit for any one vehicle. I disagree. It directly nears the general provisions, and when an insured reads the general provisions, it is my contention that a reasonable insured would not anticipate that Safeco would incorporate this to mean that they are going to not just limit their own coverage, but they're going to use this language to apply to other insurers coverage. The second alternate reasonable interpretation that I identified earlier is paragraph one. Assuming, and again, I disagree with the contention that paragraph one or the introductory paragraph of the other insurance language applies to other insurers, but if one were to take that position, the tail on paragraph one could also lead a reasonable and ordinary insurer to believe limitation in paragraph one applies separately, meaning on the one hand it applies on a primary basis and separately coverages on an extended basis. Again, this is something that a reasonable and ordinary insurer... Let me interrupt you again to ask, what about our Gohagan case, the 2016 case, are you familiar with it? Gohagan versus Cincinnati Insurance Company, it seems to me the argument is very similar to that. Well, the Gohagan case is in first the Gohagan case is the case involving the individual who had a tree fall. And so in that particular case the issue were two policies issued by the employer of the worker that called the tree on the injured person. That was a case where you had a business operations policy and a commercial general liability policy and the issue was whether those two policies from the same insurer stack. In this particular case, my contention is that this is not a stacking problem. This is a set-off case. And in this particular case, there's no dispute that the travelers million dollars in coverage is primary. There's no... I think all parties agree on that. Likewise, to the extent there is coverage through Safeco, there is coverage through XS. Not a stacking case of Gohagan. And if I recall, relied on the Ritchie opinions and opinions specifically focused on XS. The issue here at this point is not stacking. Whether or not the language in paragraph one of the other insurance clause is a set-off or not. So I would distinguish Gohagan on that basis. Mr. Coppedge, you're within your rebuttal time. You can continue if you like or you can reserve. I'll continue for another minute or two. Just to make sure that I finish my thought on the issue of paragraph one applying separately. Paragraph one says on either a primary or XS basis that a reasonable insured could easily interpret that to mean to the extent a set-off is contained in a paragraph one. If that is a set-off, you have to analyze separately. In other words, you look at all of the primary policy, determine the highest limit. Then you look at all of the XS policies and determine the highest limit. You don't cross between the two, as Safeco has attempted to do in this case. The language on either a primary or XS basis is completely unnecessary if that was not At this time I see that there's about three minutes left. I will reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Coppedge. Mr. Moothart. Thank you, and good morning. So ultimately this comes down to whether or not these these propositions offered by the appellants are plausible, and they use the word plausible multiple times, but we all know what plausible means, and they have to actually make sense. So in order to have an ambiguity, the language can't just be confusing. It can't be difficult. By their nature, insurance policies can be difficult because they are a contract that is meant to address effectively an unlimited set of potential circumstances. So your language is always going to be a little bit, it's kind of like stereo instructions, it's always going to be a little bit hard because different people are looking at it in different circumstances exist. So, but your interpretation, in order to create an ambiguity, you have to by definition have two different reasonable interpretations. Neither of the interpretations that are proffered by the appellants can be considered plausible, and that's what the district court found. When the the other insurance provision that is at issue in their ambiguity argument is looked at in its totality, and you can't parse words, you can't take sentences apart, it refers to other applicable underinsured motorist insurance, and then it states any recovery for damages under all such policies or provisions of underinsured motorist coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis. So when you when you address this also within the scope of the policy that has a more specific provision that addresses policies issued by Safeco, you can't reach any other conclusion than this is referring to any policies that offer underinsured motorist coverage and is meant to specifically address exactly the scenario that we have in this case. And the second that their second argument that you can just take this either a primary or excess basis and attempt to apply this separately does not work when you read the preceding language which says under any insurance providing underinsured motorist coverage on either a primary or excess basis. So when you read the sentence in its entirety, it's obviously meant to apply to a selection of policies whether they provide coverage on a primary or an excess basis. And it's not meant to apply to them separately where you would get the highest limit of the primary and then you get the highest limit of the excess. In fact, if that were the case, then you wouldn't even have this provision because you'd be getting both, you'd be getting contributions from both policies in a circumstance like this. And so there would be no reason for that provision to be in the policy. Can I interrupt you, sir? Absolutely. The other side in their brief 40 or 50 times used the term set-off. They cite set-off cases. They use set-off 40 or 50 times. I was surprised because you mentioned set-off once and quotes dismissively one time in your whole brief. If you'd explained set-off to me, I'd have a better appreciation of your position. Can you talk about this in set-off language or does set-off language not apply or do you have any authority? You haven't given us any, but do you have any? Absolutely, and contextually in looking at this, frankly, whether it's a quote-unquote set-off or whether it's a quote-unquote anti-stacking provision doesn't make any difference. You still have to have an ambiguity in order for it not to be enforced. Set-offs by their very nature are not prohibited and, you know, as a basic construct of Missouri insurance law, a set-off can be enforceable as long as there's no ambiguity in the policy. In your brief, counsel, there are many court appeals cases that say we look very carefully at set-offs. They were cited by the other side. You didn't comment on them. Because, well, if you look at the Doherty decision and which refers to stacking language, it is effectively the exact same provision and Doherty refers to stacking as, and I'll quote it here, stacking refers to an insured's ability to obtain multiple insurance coverage benefits for any injury either from more than one policy as whether the insured has two or more separate vehicles under separate policies or from multiple coverages provided for within a single policy. So Doherty had effectively the same type of provision. It was two state farm policies in that case, but it was effectively the same position provision that operated in the exact same manner and the Doherty court, as you'd be aware, looked at this within the context of stacking. So we did address it in a sense of all of the stacking case, all of the set-off cases that were cited by the appellant all have, for manners, all of them have exact same fault in that they effectively create what the courts refer to as a loser at coverage. And so anytime you have a, for example, a hundred thousand dollar limit, but because of the nature of underinsured motorist coverage, there must be underlying coverage, you're never going to replace or never going to recover the hundred thousand dollar stated limit in the declarations. This case, so even if this is a set-off and even if this court were to give it strict scrutiny, it still passes that strict scrutiny because this is not a loser at coverage, as recognized by the district court. Had the policy not been in place, plaintiff would have recovered $250,000 in UIM coverage, just like the declarations say. So ultimately, I think it is stacking and, you know, as this court's aware, the term stacking, which have now made their way into insurance policies, these were nomenclature used by lawyers and courts to describe groups of what they perceive to be similar insurance provisions. Same thing's true for set-offs. Sometimes these things are called set-offs because they act as a set-off and sometimes they're called stacking. Ultimately, it's not going to make any difference. You still have to have an ambiguity and the ambiguity that's cited in the litany of cases by the appellants on whether the court wants to apply a strict or scrutiny to this language, it passes. It doesn't have the flaw in the cases that were cited by the plaintiff. Now, your favorite term is inter-policy stacking. Back in the old days, that wasn't used, but I see the Court of Appeals has started to use that. But the Missouri Supreme Court has never used that term. Have they, inter-policy stacking? I don't believe the Missouri Supreme Court has ever used inter-policy stacking as a means of addressing when there's two or more policies. Right, I mean in terms of quoting it, inter-policy stacking, but the Court of Appeals has started to use it, I notice. So it's not illegitimate, but it is of new vintage. Yeah, and it's just again, it's just nomenclature to, as the stacking cases develop and you, you know, all the stacking was within a policy. It was multiple vehicles, and it was a spinoff of the uninsured motorist coverage cases. And then it made its way into to underinsured motorist cases via this other insurance provision. And then, now it's made its way into multiple policies. And the, so these are all just terms that are developed to allow people to, to in an easier fashion express what's going on. But they have no impact on the ultimate rules of construction. I mean, the policy is, is viewed as a whole. Everybody agrees with that. The declarations and headings, Appellant's counsel referred multiple times to this heading, two or more autos. Headings are just headings. They're just like declarations. They don't create coverage. They're just a heading that is then explained in more detail by the language that it goes beneath. So whether we call these stackings, setoffs, inter, intra, doesn't really matter. What matters is what the policy language says, and that's reviewed, you know, as a matter of law by the, by the court in its totality. And when we look at this language, it really can't mean anything else. And it applies as cleanly as possible to this exact circumstance. Everybody agrees the traveler's policy is primary. Travelers agreed they paid their million bucks. And the policy, the Safeco policy provides that you will get the highest limit of underinsurance available. In this case, they got the million dollars. Consequently, there is no ambiguity. Again, it's undisputed that in the context of underinsured motorist coverage, anti-stacking provisions or setoffs are, again, in the UIM context, setoffs are treated differently because of the $25,000 statutory requirement. But in the UIM context, setoffs, anti-stacking are all allowed and all contractually appropriate as long as there's no ambiguity. Plaintiffs cannot identify an ambiguity. They cannot identify an alternative plausible interpretation that would create an ambiguity. Unless there's questions, that's what I've got. So, Counselor, if I understand your logic and your citation to the language in the case, if travelers had paid less than a million, then your policy would have potentially been applicable. Is that correct? Yeah, absolutely. If the traveler's limits were $100,000 and the Safeco limits are $250,000, then the Safeco policy, because of the size of the judgment, the Safeco policy would be $100,000. The Safeco policy would have paid $150,000. So, the plaintiff would have, the appellant would have recovered $250,000, which is the highest limit available under the Safeco policy. And again, in the context of this illusory coverage, had there been no traveler's policy, which is certainly not uncommon to only have one applicable policy, then the full $250,000 limits would have been paid. All right. Anything else, Mr. Moodheart? Nothing, Judge. All right. Thank you. Mr. Coppedge, your rebuttal? I'm glad I reserved a fair amount of time for rebuttal because I heard opposing counsel say several things that I think are worthy of addressing. And the first thing that I heard repeatedly was, well, it doesn't matter if it's a set-off or whether it's stacking. All of these provisions, they read like stereo instructions. That is not the standard in a case like this. A insurance company has an obligation to produce language that a reasonable and ordinary insurer can understand and interpret. And they've completely failed to do so in this case. And I think perhaps the strongest argument in support of the fact that there is ambiguity in the language and confusion in the language is the fact that Safeco has incorrectly identified what they're doing this entire case. You heard opposing counsel just now say that if the primary coverage was only $100,000, then Safeco would have been obligated to pay $150,000. That is the definition of a set-off. Stacking or inter-policy stacking, as they've tried to couch things, is whether there is anything available at all from a secondary policy, not whether it can be reduced. Well, counsel, now be careful there. Be careful there. I wasn't going to interrupt you, but I have to. There are many insurance policies where there are deductibles and payoffs and set-offs and all that. So it can't be, as you say, an all-or-nothing deal. That's true. Based on the circumstances in the case, in particular, unique, factual circumstances, that's true. In this case, it's my position that this is clearly designed to be a set-off. And the fact that Safeco continually calls it the wrong thing and has done so throughout this case, I respectfully disagree that it doesn't matter. Words matter. And what insurance policies do and the terminology we use matter. And if you do it incorrectly and if you get sloppy with it, that's when ambiguities are created. And in this particular case, it's my contention that there's not just one alternative reasonable interpretation. There's three. There's the position Safeco's taken. There's the position that the other insurance only applies to Safeco policies. And there's the position that the other insurance, paragraph one, applies separately across coverage levels. And so because of those three alternative interpretations, a reasonable insurer looking at this, you're right. They might feel like they're looking at stereo interruptions because it's so ambiguous. There are no other Thank you, Mr. Coppedge. And thank you also, Mr. Moothart, for participating in this morning's proceedings. Your argument's been very helpful in the briefing, and we'll take it under advisement and render a decision in due course. Thank you both.